1  THOMAS J. GODDARD
2  Self-Represented (Pro Per)
   [Address Protected by ADA]
3  (415) 985-5539
   thomas@goddard.app
4
5
6
7
8



FILED

MAR 28 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

# CV 25-02910

1  THOMAS J. GODDARD, an individual,    )   Case Number:
2          Plaintiff,                   )
                                        )   COMPLAINT FOR:
3                                       )
4          v.                           )   1. VIOLATION OF CIVIL RIGHTS
                                        )      (42 U.S.C. § 1983)
5  COUNTY OF CONTRA COSTA;              )   2. VIOLATION OF ADA (TITLE II)
   SUPERIOR COURT OF CALIFORNIA,        )   3. RELIGIOUS DISCRIMINATION
6  COUNTY OF CONTRA COSTA;              )   4. CONSTITUTIONAL VIOLATIONS
   TERRI A. MOCKLER, in her individual  )   5. PERSONAL INJURY
7  and                                  )   6. INTENTIONAL INFLICTION OF
   official capacities;                 )      EMOTIONAL DISTRESS
8  MICHELLE DAWSON, in her individual   )   7. DENIAL OF ACCESS TO COURTS
   and                                  )   8. CONSPIRACY TO VIOLATE
9  official capacities;                 )      CIVIL RIGHTS (42 U.S.C. § 1985)
10 MICHAEL LEPIE, in his individual and )   9. FIRST AMENDMENT
   official capacities;                 )      RETALIATION
11 DEPUTY    DISTRICT    ATTORNEY       )   10. VIOLATION OF THE BANE ACT
12 BROWN, in                            )       (CALIFORNIA CIVIL CODE §
   their individual and official capacities; )       52.1)
13 LUCY GONZALES, in her individual and )   11. ADA AND SECTION 504
14 official capacity;                   )       RETALIATION
   CLIFTON HUFFMASTER, in his indi-     )
15 vidual                               )   DEMAND FOR JURY TRIAL
   and official capacities;             )
16 TERI BRANCO, in her individual and   )   REQUEST FOR EMERGENCY
   official capacity;                   )   INJUNCTIVE RELIEF
17 ANDREW ADAMS, in his individual and  )
18 official capacity;                   )
   NICK BILLINGS, in his individual and )
19 official capacity;                   )
   SIERRA DUGAN, in her individual      )
20 capacity;                            )
21 JOHN DOE BAILIFF #1, in his individ- )
   ual                                  )
22 and official capacities;             )
   JOHN DOE BAILIFF #2, in his individ- )
23 ual                                  )
24 and official capacities; et al.,     )
25          Defendants.                 )
26 _____
27
28

                                    - 2 -                              COMPLAINT

TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................. 5

I.A. SPECIFIC DISCRIMINATORY STATEMENTS AND ACTIONS ....................... 6

JURISDICTION AND VENUE ............................................................ 7

PARTIES .............................................................................. 7

FACTUAL ALLEGATIONS ............................................................... 13

I. RECENT DEVELOPMENTS (MARCH 21-25, 2025)...................................... 13

II. CRIMINALIZATION OF PROTECTED SPEECH .......................................... 17

III. SIERRA DUGAN'S ETHNIC CONNECTION AND COORDINATION WITH DA BROWN 19

IV. CHRONOLOGICAL PATTERN OF CONSTITUTIONAL VIOLATIONS ................ 20

II.A. DIRECT CAUSATION BETWEEN DEFENDANTS' ACTIONS AND PLAINTIFF'S INJURIES .......................................................................... 29

II.B. DEFENDANT IMMUNITY CONSIDERATIONS .......................................... 30

FIRST CAUSE OF ACTION – VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) ......... 31

SECOND CAUSE OF ACTION – VIOLATION OF ADA (TITLE II) ......................... 34

THIRD CAUSE OF ACTION – RELIGIOUS DISCRIMINATION ............................. 35

FOURTH CAUSE OF ACTION – CONSTITUTIONAL VIOLATIONS ......................... 36

FIFTH CAUSE OF ACTION – PERSONAL INJURY ....................................... 37

SIXTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS 38

SEVENTH CAUSE OF ACTION – DENIAL OF ACCESS TO COURTS ..................... 38

EIGHTH CAUSE OF ACTION – CONSPIRACY TO VIOLATE CIVIL RIGHTS (42 U.S.C. § 1985) ............................................................................. 39

NINTH CAUSE OF ACTION – FIRST AMENDMENT RETALIATION ..................... 40

TENTH CAUSE OF ACTION – VIOLATION OF THE BANE ACT (CALIFORNIA CIVIL CODE § 52.1) ...................................................................... 42

ELEVENTH CAUSE OF ACTION – ADA AND SECTION 504 RETALIATION ............. 43

PRAYER FOR RELIEF.................................................................. 44

DEMAND FOR JURY TRIAL ................................................................ 46

COMPLAINT

## PRELIMINARY STATEMENT

1. This Complaint arises from ongoing civil rights violations, religious discrimination, and disability rights violations by Contra Costa County officials and employees through March 25, 2025. The violations include systematic denial of court access, physical injury, prosecutorial misconduct, evidence manipulation, and a documented pattern of coordinated misconduct targeting Plaintiff's protected characteristics and constitutional rights.

2. Recent developments have further exacerbated these violations, including:

   a. Systematic denial of access to transcripts despite multiple formal requests and conflicting information provided by court officials regarding fee waivers (March 21-25, 2025);

   b. Continued Brady violations including withholding of exculpatory evidence regarding vehicle ownership transfer proving factual impossibility of alleged offenses;

   c. Refusal to provide critical discovery despite being required by both constitutional and statutory law (Penal Code § 1054.1);

   d. Deliberate obstruction of access to electronic devices seized from Plaintiff which likely contain exculpatory evidence;

   e. Continued denial of ADA accommodations for documented disabilities in violation of the Americans with Disabilities Act and due process;

   f. Criminalization of protected speech expressing moral opinions about love and relationships;

   g. Creating artificial procedural barriers by requiring mental health diversion motions be submitted through Department 10 despite PC 1001.36 containing no such requirement, and despite Department 10's next available date being May 5, 2025, well after the trial date; and

   h. Setting a trial date of April 7, 2025, despite these multiple, serious violations of Plaintiff's constitutional and statutory rights.

3. The constitutional violations described herein are not merely technical in nature but represent a systematic pattern of rights violations that have actively prejudiced Plaintiff's ability to present a complete defense. These violations have been repeatedly documented

COMPLAINT

through formal objections, written communications, and court filings, all of which have been ignored or denied without justification.

4. Due to the immediate and irreparable harm being caused by these ongoing violations and the impending April 7, 2025 trial date, Plaintiff seeks emergency injunctive relief in addition to damages for the violations of his constitutional and statutory rights.

5. Plaintiff files this complaint with the utmost respect for the judicial system and the essential role courts play in upholding constitutional rights and ensuring equal justice under law. This action is brought not to disparage the courts, but because there appears to be no other remedy available to address the systematic violations of Plaintiff's fundamental rights. Plaintiff has made repeated good-faith attempts to resolve these issues through proper channels before seeking federal intervention, and brings this action solely to protect rights that are guaranteed by the Constitution and federal law.

## I.A. SPECIFIC DISCRIMINATORY STATEMENTS AND ACTIONS

6. On February 18, 2025, when Plaintiff attempted to request ADA accommodations, Judge Mockler, according to Plaintiff's best recollection, stated words to the effect of "We're moving on" and "I don't care," demonstrating deliberate indifference to federally protected rights.

7. On February 18, 2025, Bailiff John Doe #1, according to Plaintiff's best recollection, stated words approximating "You need to stop talking or be removed," while positioning his hand on his weapon during Plaintiff's legitimate accommodation request.

8. On February 28, 2025, Public Defender Dawson, according to Plaintiff's best recollection, stated regarding mental health diversion words to the effect of "If you don't want to waive time and since it is already ready, file it on your own," but simultaneously threatened to withdraw as counsel if Plaintiff did so, creating an impossible situation.

9. On March 21, 2025, when Attorney Horowitz requested accommodation for Plaintiff's disabilities, Judge Mockler, according to Plaintiff's best recollection, falsely claimed she had never rejected accommodations at previous hearings, despite the court record showing her explicit admission on February 28, 2025, that she "didn't read [Plaintiff's] Marsden script."

10. On March 21, 2025, Judge Mockler denied Attorney Horowitz's request for a continuance

COMPLAINT

1   with protest objecting to the time waiver requirement, which Horowitz specifically requested

2   after explaining that Department 10's earliest available date to hear the mental health

3   diversion motion was May 5, 2025. DA Brown opposed this request despite the court-created

4   barrier making it impossible to have the diversion motion heard before trial.

11. On March 25, 2025, DA Brown, according to Plaintiff's best recollection, responded to
legitimate discovery requests with threatening language, stating words approximating "I
would be very careful if you are in any way making accusations that me or the Concord
Police Department have tampered with the evidence," intended to intimidate Plaintiff and
counsel from pursuing legitimate Brady material.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to:

   a. 28 U.S.C. ğ 1331 (Federal Question);

   b. 28 U.S.C. ğ 1343(a)(3) and (4) (Civil Rights);

   c. 42 U.S.C. ğ 1983 (Civil Rights);

   d. 42 U.S.C. ğ 1985 (Conspiracy to Violate Civil Rights);

   e. Americans with Disabilities Act (42 U.S.C. ğ 12131 et seq.);

   f. 28 U.S.C. ğ 1367 (Supplemental Jurisdiction).

13. Venue is proper in the Northern District of California pursuant to 28 U.S.C. ğ 1391(b)
because all defendants reside in this district and a substantial part of the events giving rise to
the claims occurred within this district.

14. The amount in controversy exceeds $75,000, exclusive of interest and costs.

## PARTIES

15. Plaintiff THOMAS J. GODDARD:

   a. Resident of Contra Costa County, California;

   b. Individual of Jewish faith and Holocaust survivor family;

   c. Qualified individual with disabilities as documented by UCSF Medical Center (February
   5, 2025, and February 26, 2025);

   d. Defendant in Criminal Case No. 01-24-03484, currently pending in Contra Costa County

Superior Court.

16. Defendants:

    a. COUNTY OF CONTRA COSTA

        (1) Government entity responsible for policies and practices governing the District Attorney's Office and Public Defender's Office;

        (2) Receives federal funding, subjecting it to requirements of ADA Title II and Section 504;

        (3) Maintains discriminatory policies and fails to adequately train employees on disability accommodations;

        (4) Custom and practice of ignoring constitutional rights of disabled individuals.

    b. SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA

        (1) Judicial entity responsible for providing access to justice to all litigants;

        (2) Receives federal funding, subjecting it to requirements of ADA Title II and Section 504;

        (3) Implements and enforces policies that deny meaningful access to court proceedings;

        (4) Maintains contradictory administrative requirements that create systematic barriers to court access;

        (5) Created and enforced non-statutory procedural barriers requiring diversion motions to be submitted to Department 10 rather than the assigned department.

    c. TERRI A. MOCKLER, Judge, Department 27

        (1) On February 18, 2025, according to Plaintiff's best recollection, explicitly stated words to the effect of "I don't care" when Plaintiff presented medical documentation requesting accommodations;

        (2) On February 28, 2025, personally admitted she "didn't read [Plaintiff's] Marsden script" submitted as an ADA accommodation;

        (3) On February 18, 2025, personally ordered bailiffs to intimidate Plaintiff during accommodation request;

        (4) Consistently stated in all hearings from January 31 through March 21, 2025, that

COMPLAINT

diversion motions must be submitted through Department 10, creating an artificial procedural barrier not found in PC 1001.36;

(5) On March 21, 2025, denied Attorney Horowitz's request for a continuance despite being informed Department 10's earliest available date was May 5, 2025, effectively making diversion consideration impossible before trial;

(6) On March 21, 2025, provided false information about transcript access requirements, stating Plaintiff needed a "fee waiver for criminal proceedings" when no such waiver exists;

(7) Personally refused to accept defense motions on March 20, 2025 without a time waiver, forcing Plaintiff to choose between constitutional rights.

d. MICHELLE DAWSON, Public Defender's Office

(1) On February 18, 2025, according to Plaintiff's best recollection, personally threatened to withdraw as counsel if Plaintiff did not enter a plea, stating words to the effect of "If you don't enter a plea, I will withdraw as your counsel";

(2) Personally refused to present mental health diversion motion despite complete documentation;

(3) On February 13, 2025, during a phone call, created artificial barriers to statutory rights by falsely claiming diversion motions had to be submitted through Department 10 and requiring "county format" without providing examples;

(4) On February 28, 2025, personally created artificial barriers to statutory rights by requiring "county format" for diversion application without providing examples;

(5) Personally coordinated with DA Brown to force plea entry despite statutory right to diversion consideration;

(6) After court on February 18, 2025, coordinated directly with Judge Mockler to schedule Marsden hearing without consulting Plaintiff;

(7) Failed to present exculpatory vehicle timeline evidence despite knowledge of its existence;

(8) Failed to provide case files and exhibits to successor counsel, Attorney Horowitz.

e. MICHAEL LEPIE, Assistant Public Defender

    (1) Declared conflict of interest on March 6, 2025;

    (2) Failed to provide case files and exhibits containing exculpatory evidence to successor counsel;

    (3) Personally coordinated timed withdrawal of representation immediately after Plaintiff presented evidence of Officer John Choi's conflict of interest;

    (4) Actively participated in obstructing Plaintiff's right to mental health diversion consideration;

    (5) Acted with deliberate indifference to Plaintiff's constitutional rights.

f. DEPUTY DISTRICT ATTORNEY BROWN

    (1) Personally withheld exculpatory evidence regarding vehicle ownership;

    (2) Failed to provide discovery despite multiple formal requests on March 17 and March 24, 2025;

    (3) Coordinated with defense counsel to obstruct statutory rights to mental health diversion;

    (4) On March 21, 2025, opposed Attorney Horowitz's request for a continuance despite being informed that Department 10's earliest available date for hearing the diversion motion was May 5, 2025;

    (5) Criminalized protected moral opinions about relationships as evidence of criminal intent;

    (6) On March 25, 2025, according to Plaintiff's best recollection, made explicit threats regarding evidence requests, stating words approximating "I would be very careful if you are in any way making accusations";

    (7) Used shared Navajo heritage with Sierra Dugan to coordinate prosecution strategy against Plaintiff;

    (8) Acted with deliberate indifference to Plaintiff's constitutional rights.

g. LUCY GONZALES, Court Reporter

    (1) Court reporter for all of Plaintiff's hearings;

COMPLAINT

(2) Failed to respond to multiple email requests for transcripts, despite receiving them as confirmed by Elisa Chambers;

(3) Responsible for generating transcripts essential to Plaintiff's defense;

(4) Did not provide any means for Plaintiff to put a deposit on transcripts or submit fee waiver;

(5) Acted with deliberate indifference to Plaintiff's constitutional rights to due process and court access.

h. CLIFTON HUFFMASTER, Lead Investigator

(1) Demonstrated bias through academic work showing prejudice against Jewish historical narratives;

(2) Published paper "Slavery as a Foil" (2019) demonstrating bias;

(3) Failed to investigate exculpatory evidence regarding vehicle ownership timeline;

(4) Exhibited pattern of discriminatory conduct in investigation, focusing exclusively on evidence supporting prosecution theory;

(5) Deliberately omitted exculpatory evidence from investigative reports;

(6) Acted with deliberate indifference to Plaintiff's constitutional rights.

i. TERI BRANCO, ADA Coordinator

(1) On February 26, 2025, issued formal denial letter of ADA accommodations without factual basis;

(2) Failed to engage in interactive process required by ADA regulations;

(3) Claimed accommodations would "fundamentally alter" proceedings without providing any explanation;

(4) Created procedural barriers to accommodation requests;

(5) Acted with deliberate indifference to Plaintiff's disability rights.

j. ANDREW ADAMS, Court Operations Manager

(1) On February 18, 2025, according to Plaintiff's best recollection, personally stated words to the effect of "Not required to help you" regarding ADA form completion;

(2) Claimed "interpretation difference" regarding ADA requirements to justify denial of

COMPLAINT

assistance;

     (3) According to Plaintiff's best recollection, stated words approximating "Not part of DOJ" to dismiss federal obligations under ADA;

     (4) Created procedural barriers through artificial requirements not found in law or regulations;

     (5) Acted with deliberate indifference to Plaintiff's disability rights and court access.

k. NICK BILLINGS, Stand-in Public Defender

     (1) On February 14, 2025, engaged in pre-hearing coordination with the Supervising DA, discussing, according to Plaintiff's best recollection, words to the effect of "He will not enter a plea";

     (2) According to Plaintiff's best recollection, falsely stated words approximating "Our local procedure requires plea before diversion" despite being shown PC 1001.36(c) statutory language;

     (3) Misrepresented Plaintiff's position in court, stating, according to Plaintiff's best recollection, words to the effect of "My client is uncomfortable entering a plea today" after Plaintiff explicitly stated this would prejudice his statutory rights;

     (4) Displayed hostile demeanor and, according to Plaintiff's best recollection, "would not tell me" the reason for his attitude;

     (5) Engaged in post-hearing intimidation by driving his vehicle directly toward Plaintiff, making a threatening turn, and following closely behind Plaintiff's vehicle;

     (6) Acted with deliberate indifference to Plaintiff's constitutional rights.

l. SIERRA DUGAN, Former Public Defender

     (1) Made direct admission during December 19, 2024 pretrial hearing recess, stating, according to Plaintiff's best recollection, words to the effect of "yep, I did exclude exculpatory evidence" regarding vehicle registration documentation;

     (2) Disclosed ethnic connection with DA Brown, specifically stating they shared Navajo heritage;

     (3) According to Plaintiff's best recollection, explained intent to leverage 10-year

relationship from her time as a Marin public defender to Plaintiff's detriment, stating words approximating "I can work with her because we're both Navajo";

(4) Failed to present prepared mental health diversion motion despite clear qualification and documentation;

(5) Deliberately withheld social media evidence showing protected speech;

(6) Failed to properly transfer exhibits to successor counsel as claimed;

(7) Coordinated with DA Brown based on shared Navajo heritage to prejudice Plaintiff's defense;

(8) Acted with deliberate indifference to Plaintiff's constitutional rights.

m. JOHN DOE BAILIFF #1

(1) On February 18, 2025, made physical threats during ADA accommodation request;

(2) According to Plaintiff's best recollection, stated words to the effect of "You need to stop talking or be removed" during legitimate accommodation request;

(3) Coordinated with court staff through non-verbal cues;

(4) Engaged in intimidation to prevent assertion of statutory rights;

(5) Acted with deliberate indifference to Plaintiff's constitutional rights.

n. JOHN DOE BAILIFF #2

(1) On February 18, 2025, positioned hand on weapon during Plaintiff's accommodation request;

(2) Created physical barrier to courtroom;

(3) Coordinated with Judge Mockler through non-verbal cues;

(4) Utilized physical positioning and stance to intimidate;

(5) Acted with deliberate indifference to Plaintiff's constitutional rights.

## FACTUAL ALLEGATIONS

### I. RECENT DEVELOPMENTS (MARCH 21-25, 2025)

#### A. Artificial Procedural Barriers to Mental Health Diversion

17. From January 31, 2025, through the March 21, 2025 readiness conference, Judge Mockler consistently stated that any mental health diversion motion under PC 1001.36 must be

submitted through Department 10 rather than Department 27, despite no such requirement appearing in the statute.

18. On February 13, 2025, during a phone call, Public Defender Dawson reinforced this artificial procedural barrier, falsely claiming to Plaintiff that diversion motions had to be submitted through Department 10.

19. On March 21, 2025, Judge Mockler repeated this non-statutory requirement to Attorney Horowitz, who then informed the court that Department 10's earliest available date to hear such a motion would be May 5, 2025, nearly a month after the scheduled April 7, 2025 trial date.

20. Attorney Horowitz requested a continuance with protest, objecting to the time waiver requirement and waiving of Plaintiff's rights, explaining that this court-created procedural barrier made it impossible to have the diversion motion considered before trial.

21. DA Brown opposed this request for continuance, and Judge Mockler denied it, effectively making it impossible for Plaintiff to exercise his statutory right to mental health diversion consideration under PC 1001.36.

22. This pattern of creating and enforcing artificial procedural barriers not found in statute demonstrates a deliberate effort to obstruct Plaintiff's access to statutorily guaranteed rights and represents a violation of due process and equal protection.

### B. Contradictory Transcript Access Requirements

23. On March 21, 2025, during a readiness conference in Plaintiff's criminal case, Judge Mockler claimed that Plaintiff's transcript requests were being denied because he did not have a fee waiver for criminal proceedings.

24. Later that same day, Elisa Chambers, the manager of the court reporter's office, informed Plaintiff that there is no fee waiver for criminal court, creating a direct contradiction and administrative catch-22.

25. Despite Plaintiff having an approved fee waiver (Form FW-001, Case #C25-00487) filed on February 21, 2025, and automatically accepted after 5 days according to Elisa Chambers (the court reporter manager), this waiver was not honored for transcript requests.

COMPLAINT

26. On March 22, 2025, Plaintiff submitted a formal email to the court requesting clarification of this contradiction and requesting immediate production of the transcripts, but received no response.

27. Despite multiple email requests to court reporter Lucy Gonzales, no response was received, even though Elisa Chambers confirmed that Lucy had received these communications.

28. Elisa Chambers further stated that the transcripts would not be prepared by the April 7, 2025 trial date, and provided no mechanism for Plaintiff to put a deposit on the transcripts or submit his fee waiver directly to Lucy Gonzales.

29. These contradictory requirements and procedural barriers have effectively denied Plaintiff access to transcripts that are critical for his defense, especially given the rapidly approaching April 7, 2025 trial date.

### C. Obstruction of Access to Electronic Devices

30. During the March 21, 2025 readiness conference, Attorney Horowitz noted on the record that multiple electronic storage devices seized from Plaintiff likely contain exculpatory evidence but had not been made available to the defense.

31. In a written response dated March 25, 2025, the prosecution claimed that "Per supplemental report 4, CPD has not been able to view or extract any data from the iPad, desktop Mac computer, Macbook, 2 external hard drives, or the USB drive. I do not believe you can copy what you cannot access, but again I will ask CPD to confirm. If they are able to access it, it will be provided in the format they use. I am not required to put discovery into your preferred format."

32. This response deliberately obstructs access to potentially exculpatory evidence by claiming an inability to access devices while simultaneously refusing to allow the defense to access them directly.

33. The electronic devices likely contain data that would establish Plaintiff's location and activities during the relevant time periods, directly contradicting the prosecution's allegations.

34. This obstruction of access to evidence violates both Brady v. Maryland and California Penal

COMPLAINT

Code § 1054.1(c), which requires disclosure of "[a]ll relevant real evidence seized or obtained as a part of the investigation of the offenses charged."

### D. FLOCK Data Refusal

35. The prosecution's case relies heavily on FLOCK camera data allegedly placing Plaintiff's vehicle at locations connected to the charges.

36. Despite multiple formal requests for this data, including on March 17, 2025, and March 24, 2025, the prosecution has refused to provide the raw data or foundation materials necessary to challenge its accuracy.

37. On March 25, 2025, the prosecution responded to these requests by stating, according to Plaintiff's best recollection: "I have disclosed the information for who I currently intend to call and if that changes, I will provide updated info. As you know since you included the law, I have no requirement to provide their phone numbers, and I will not be providing those."

38. This response deliberately mischaracterizes the request for FLOCK data as a request for witness contact information, when in fact the request was specifically for "any and all data and foundation that you will be using to introduce that data at trial."

39. This refusal to provide the FLOCK data directly contradicts the prosecution's obligation under Brady v. Maryland to disclose material exculpatory evidence and violates Penal Code § 1054.1(c) requiring disclosure of all relevant real evidence.

### E. Continued ADA Accommodation Denials

40. During the March 21, 2025 readiness conference, Judge Mockler claimed she did not reject Plaintiff's ADA accommodations at previous hearings, despite documented evidence to the contrary.

41. Judge Mockler did not address her previous explicit statement during the February 28, 2025 Marsden hearing that she "didn't read [Plaintiff's] Marsden script" submitted as part of his ADA accommodation.

42. On March 22, 2025, Plaintiff submitted an updated ADA accommodation request with current UCSF medical documentation, which was not acknowledged.

43. On March 25, 2025, Plaintiff submitted a formal written objection to the ongoing ADA

accommodation denials, citing the specific accommodations needed and the medical necessity for each, which was again not acknowledged.

44. These continued denials have severely impaired Plaintiff's ability to participate meaningfully in his defense, in violation of both the ADA and due process requirements.

### F. Pattern of Prosecution Non-Responsiveness

45. On March 21, 2025, following the readiness conference, Attorney Horowitz sent an email to Deputy District Attorney Brown asking for available dates for trial continuation to allow time to address discovery issues.

46. Deputy District Attorney Brown responded that she would not agree to a continuance despite the numerous unresolved discovery issues.

47. On March 24, 2025, Attorney Horowitz sent a comprehensive email outlining specific Brady violations, discovery deficiencies, and statutory violations, requesting immediate production of the missing materials.

48. On March 25, 2025, Deputy District Attorney Brown responded with a dismissive message stating, according to Plaintiff's best recollection, words to the effect of: "I can assure you that I have been working on the discovery in this case, but this is not the only case that I have, and you do not get to demand that things happen the second you want them to."

49. This response included threatening language regarding defense inquiries about evidence, including, according to Plaintiff's best recollection, words approximating: "I am not sure what you are implying about the 911 call, but I would be very careful if you are in any way making accusations that me or the Concord Police Department have tampered with the evidence."

50. This pattern of non-responsiveness, coupled with threats directed at defense counsel, demonstrates bad faith and further evidences the coordinated effort to deny Plaintiff his constitutional right to a fair trial.

## II. CRIMINALIZATION OF PROTECTED SPEECH

51. The prosecution has deliberately mischaracterized Plaintiff's constitutionally protected speech expressing moral opinions about relationships and love as evidence of criminal intent.

COMPLAINT

52. Plaintiff's social media posts and communications included non-threatening moral opinions, such as:

    a. "Love is the answer";

    b. "You can't buy love";

    c. Criticism of attempts to "buy her love with a new Lexus";

    d. Philosophical commentary on materialism in relationships.

53. None of these statements constituted "true threats" under the standard established by the Supreme Court in Virginia v. Black, 538 U.S. 343 (2003), which requires that statements be "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution."

54. Plaintiff's statements were constitutionally protected expressions of opinion on matters of public concern, specifically the nature of love and relationships, which the Supreme Court has recognized as being "at the heart of the First Amendment's protection." Snyder v. Phelps, 562 U.S. 443, 451-52 (2011).

55. The prosecution has intentionally taken these protected statements out of context and mischaracterized them as evidence of criminal intent, in violation of Plaintiff's First Amendment rights.

56. In Brandenburg v. Ohio, 395 U.S. 444 (1969), the Supreme Court established that speech cannot be criminalized unless it is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Plaintiff's statements about love and relationships do not come close to meeting this standard.

57. The criminalization of Plaintiff's protected speech has had a chilling effect on his expression and contributed to the violation of his constitutional rights.

58. The prosecution's actions directly violate the principle established in People v. Relerford, 104 N.E.3d 341 (Ill. 2017), that protected speech cannot be used as evidence of criminal intent.

59. Sierra Dugan, Plaintiff's former public defender, deliberately withheld this social media evidence that would have demonstrated the non-threatening, constitutionally protected nature of Plaintiff's speech, stating during a December 19, 2024 hearing recess, according to

COMPLAINT

1    Plaintiff's best recollection, that she was intentionally excluding evidence that would help

2    Plaintiff's defense.

3    ## III. SIERRA DUGAN'S ETHNIC CONNECTION AND COORDINATION WITH

4    ## DA BROWN

5    60. During the December 19, 2024 pretrial hearing recess, Sierra Dugan, Plaintiff's former public

6       defender, made a direct admission to Plaintiff, stating, according to Plaintiff's best

7       recollection, words to the effect of: "yep, I did exclude exculpatory evidence."

8    61. This concerned critical vehicle registration documentation showing the vehicle was sold on

9       August 26, 2024, and transferred through DMV on September 4, 2024 - evidence that

10      directly contradicts the prosecution's timeline but was intentionally withheld by Dugan.

11   62. During this same conversation, Dugan disclosed her ethnic connection with DA Brown,

12      specifically stating, according to Plaintiff's best recollection, that they shared Navajo

13      heritage.

14   63. Dugan explicitly stated she intended to leverage this shared heritage and connection, telling

15      Plaintiff, according to Plaintiff's best recollection, words approximating: "I can work with her

16      because we're both Navajo."

17   64. Dugan further disclosed a 10-year relationship with DA Brown from her time as a Marin

18      public defender, creating a clear conflict of interest.

19   65. Dugan informed Plaintiff that she and DA Brown had spoken privately about his case and

20      had reached an understanding about how to proceed, without consulting Plaintiff or

21      obtaining his consent for these ex parte communications.

22   66. This ethnic connection was explicitly used by Dugan as a means to coordinate with DA

23      Brown to Plaintiff's detriment, violating her ethical obligations as defense counsel and

24      Plaintiff's Sixth Amendment right to conflict-free representation.

25   67. The Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), established that the

26      right to counsel includes the right to effective assistance of counsel. The Court in Wood v.

27      Georgia, 450 U.S. 261 (1981), further emphasized that "where a constitutional right to

28      counsel exists, our Sixth Amendment cases hold that there is a correlative right to

representation that is free from conflicts of interest."

68. Dugan's conduct violated the principle established in Cuyler v. Sullivan, 446 U.S. 335 (1980), that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."

69. This coordination based on shared ethnic heritage and a personal relationship constitutes a violation of Plaintiff's rights under 42 U.S.C. § 1983 and contributed to the conspiracy to violate his civil rights under 42 U.S.C. § 1985.

## IV. CHRONOLOGICAL PATTERN OF CONSTITUTIONAL VIOLATIONS

### A. Religious and Ethnic Targeting (September 2024 - Present)

70. On September 12, 2024, during detention, Plaintiff was subjected to religious discrimination through:

    a. Placement of Stars of David in multiple detention cells;

    b. Systematic transfers between cells marked with these symbols;

    c. "Hebrew slave" references by officers;

    d. Reference to "chi town" next to Star of David indicating surveillance knowledge of 2015 meeting with Charles Givre (NSA connection).

71. This targeting was directly connected to Plaintiff's Jewish identity and public support for Israel following the October 7, 2023 attacks.

72. On March 12, 2025, X (formerly Twitter) officially confirmed they "reviewed [Plaintiff's] allegations of copyright infringement, and have disabled the content" Plaintiff reported from their site, providing independent third-party validation of the targeting campaign against Plaintiff.

73. This confirmation establishes that the same defamatory content attributing false anti-Palestinian statements to Plaintiff appeared in both his Slickdeals HR file (leading to termination) and was disseminated online as part of a coordinated campaign.

74. Lead Investigator Clifton Huffmaster demonstrated bias through his academic work, including a published paper "Slavery as a Foil" (2019) in the Berkeley Journal of Religion and Theology, which shows evidence of religious bias and minimization of historical slavery.

75. This religious targeting has continued through the prosecution, as evidenced by selective prosecution, denial of exculpatory evidence, and obstruction of statutory rights.

**B. Systematic Obstruction of Mental Health Diversion (January-March 2025)**

76. From January 31, 2025, through March 21, 2025, Judge Mockler consistently stated in all hearings that diversion motions must be submitted through Department 10 rather than Department 27, creating an arbitrary procedural barrier not found in PC 1001.36.

77. PC 1001.36(c) explicitly states that diversion may be considered "at any stage of the proceedings," making this court-created requirement a direct contradiction of statutory language.

78. On February 13, 2025, during a phone call with Plaintiff, Public Defender Dawson reinforced this artificial procedural barrier, falsely claiming diversion motions had to be submitted through Department 10.

79. On February 14, 2025, stand-in counsel Nick Billings falsely stated to Plaintiff that "Our local procedure requires plea before diversion," directly contradicting the statute.

80. On March 21, 2025, when Attorney Horowitz explained to the court that Department 10's earliest available date was May 5, 2025, nearly a month after the scheduled trial date, both Judge Mockler and DA Brown refused to accommodate this court-created barrier by denying a request for continuance.

81. This systematic pattern of creating and enforcing procedural requirements not found in statute, and then refusing to accommodate the resulting timing conflicts, demonstrates a deliberate effort to prevent Plaintiff from exercising his statutory right to mental health diversion consideration.

82. This obstructive pattern is particularly egregious given that Plaintiff's diversion motion was already fully prepared with supporting documentation, needing only to be heard by the court.

**C. Nick Billings' Misconduct (February 14, 2025)**

83. On February 14, 2025, stand-in counsel Nick Billings engaged in a pattern of misconduct, including:

84. Pre-hearing Coordination with Prosecution:

COMPLAINT

a. At approximately 8:45 AM, Billings was observed speaking with the Supervising District Attorney at the desk in Department 27;

b. During this conversation, Billings was heard discussing, according to Plaintiff's best recollection, words to the effect of "He will not enter a plea," referring to Plaintiff;

c. This coordination occurred after Plaintiff had explicitly informed Billings of his intent to pursue mental health diversion under PC 1001.36;

d. This coordination is captured on court security cameras.

85. False Statements About Statutory Requirements:

a. At approximately 8:50 AM, despite being shown PC 1001.36(c) statutory language and the People v. Graham case law, Billings, according to Plaintiff's best recollection, falsely stated words approximating "Our local procedure requires plea before diversion";

b. This statement directly contradicts PC 1001.36(c), which explicitly permits diversion consideration "at any point in the judicial proceedings";

c. This false statement was made to coerce Plaintiff into entering a plea.

86. Misrepresentation of Plaintiff's Position in Court:

a. At approximately 9:15 AM in court, Billings misrepresented Plaintiff's position, stating, according to Plaintiff's best recollection, words to the effect of "My client is uncomfortable entering a plea today";

b. This mischaracterization occurred after Plaintiff had explicitly stated that entering a plea would prejudice his statutory rights under PC 1001.36;

c. This misrepresentation was designed to portray Plaintiff's legitimate legal position as mere discomfort.

87. Hostile Conduct and Intimidation:

a. At approximately 8:55 AM in the Department 27 hallway, Billings displayed a hostile demeanor;

b. When questioned about this attitude, Billings acknowledged displaying hostility but, according to Plaintiff's best recollection, stated he "would not tell me" the reason;

c. At approximately 9:45 AM in the courthouse parking lot, Billings engaged in post-

1       hearing intimidation by driving his vehicle directly toward Plaintiff, making a

2       threatening turn, and following closely behind Plaintiff's vehicle;

3      d. This intimidation may have been captured by courthouse security cameras.

4  88. These actions demonstrate Billings' deliberate violation of Plaintiff's Sixth Amendment right

5      to effective assistance of counsel and his active coordination with the prosecution to deprive

6      Plaintiff of his statutory and constitutional rights.

### D. Bailiff Intimidation and Threats (February 18, 2025)

8  89. During the February 18, 2025 hearing, two bailiffs in Department 27 engaged in a pattern of

9      intimidation and threats to prevent Plaintiff from asserting his ADA rights:

10  90. Physical Intimidation by John Doe Bailiff #1:

11      a. During Plaintiff's attempt to request ADA accommodations, this bailiff physically moved

12       toward Plaintiff in a threatening manner;

13      b. The bailiff, according to Plaintiff's best recollection, explicitly stated words

14       approximating "You need to stop talking or be removed" while Plaintiff was attempting

15       to assert his legal right to accommodations;

16      c. This threat was made in coordination with Judge Mockler, who was simultaneously

17       interrupting Plaintiff with statements to the effect of "We're moving on";

18      d. This threat was timed to interrupt Plaintiff's statutory rights assertion and ADA

19       documentation request.

20  91. Weapon-Related Intimidation by John Doe Bailiff #2:

21      a. During the same accommodation request, the second bailiff positioned his hand on his

22       weapon in a threatening manner;

23      b. This action occurred while Plaintiff was attempting to read his hearing script as part of

24       his ADA accommodation;

25      c. The bailiff's positioning created a physical barrier to the courtroom;

26      d. This threat was coordinated with Judge Mockler through non-verbal cues.

27  92. After Judge Mockler left the courtroom on February 18, 2025:

28      a. Both bailiffs stood over Plaintiff in an intimidating fashion, requesting that he leave the

courtroom;

    b. The bailiffs refused to step aside when Plaintiff asked them to do so, stating, according to Plaintiff's best recollection, they would not move;

    c. This conduct prevented Plaintiff from completing necessary documentation of ADA violations.

93. These actions by the bailiffs demonstrate a coordinated pattern of intimidation designed to prevent Plaintiff from asserting his legal rights and to coerce compliance with unconstitutional proceedings.

**E. ADA Violations and Accommodation Denials (January 31, 2025 – Present)**

94. Plaintiff has documented disabilities verified by UCSF Medical Center documentation dated February 5, 2025, and February 26, 2025, including:

    a. Paralyzed left vocal cord requiring communication accommodations;

    b. Cervical disk herniation with standing and seating limitations;

    c. Essential tremor affecting handwriting capability;

    d. Processing limitations requiring additional time and written materials.

95. On January 31, 2025, Plaintiff attempted to submit an MC-410 form requesting official ADA accommodations, but the court clerk improperly rejected the form and told Plaintiff, according to Plaintiff's best recollection, to "speak to HR."

96. On February 3, 2025, Plaintiff submitted emails to PD Dawson and the Public Defender supervisors with his ADA accommodation request, but received no response.

97. On February 18, 2025, during the plea hearing, Plaintiff attempted to read his prepared ADA accommodation request but was repeatedly interrupted and prevented from completing it, with Judge Mockler, according to Plaintiff's best recollection, explicitly stating words to the effect of "I don't care" when Plaintiff's ADA documentation was mentioned.

98. On February 26, 2025, Plaintiff received a formal denial letter from the Court's ADA Coordinator, Teri Branco, claiming his requested accommodations would "fundamentally alter" proceedings without any explanation of how or why.

99. During the February 27, 2025 Marsden hearing, Judge Mockler ignored Plaintiff's ADA

accommodation request without comment, disregarding both the email to the ADA coordinator containing Plaintiff's documents and the script itself.

100. During the February 28, 2025 Marsden hearing, Judge Mockler, according to Plaintiff's best recollection, explicitly admitted that she "didn't read [Plaintiff's] Marsden script" submitted as an ADA accommodation.

101. During the March 21, 2025 readiness conference, Judge Mockler denied having rejected ADA accommodations despite the documented pattern of denials.

102. These systematic denials of reasonable accommodations have severely impaired Plaintiff's ability to participate meaningfully in his defense, in violation of Title II of the ADA and constitutional due process requirements.

### F. Brady Violations and Discovery Deficiencies (January 2025 – Present)

103. The prosecution has engaged in a pattern of Brady violations and discovery deficiencies, including:

104. Withholding Vehicle Ownership Evidence:

    a. Documentation confirms Plaintiff sold his 2004 Acura TSX on August 26, 2024;

    b. DMV records verify the transfer was completed on September 4, 2024;

    c. All alleged incidents occurred after these dates;

    d. This evidence directly contradicts the prosecution's timeline and establishes a factual impossibility defense;

    e. Despite multiple requests, this evidence has not been properly disclosed or acknowledged by the prosecution.

105. Withholding FLOCK Data:

    a. The prosecution's case relies heavily on FLOCK camera data;

    b. Despite multiple requests, the raw data and foundation materials have not been provided;

    c. This evidence is critical for challenging the accuracy and reliability of the prosecution's timeline;

    d. The prosecution has deliberately mischaracterized requests for this data to avoid disclosure.

106. Withholding Electronic Device Evidence:

    a. Multiple electronic devices were seized from Plaintiff during the investigation;

    b. These devices likely contain location data and other evidence contradicting the prosecution's timeline;

    c. The prosecution has refused to allow access to these devices, claiming an inability to extract data while simultaneously preventing defense access;

    d. This obstruction denies Plaintiff access to potentially exculpatory evidence.

107. Withholding Witness Statements:

    a. The prosecution has not disclosed any communications with witnesses regarding timeline discrepancies;

    b. No statements have been provided addressing the obvious contradictions in witness accounts;

    c. The prosecution has admitted to communications with witnesses but refuses to disclose them, stating, according to Plaintiff's best recollection: "There is no requirement for the prosecution to disclose all communication between the prosecution, any police officer and any witness in this case".

108. Withholding Witness Contact Information:

    a. The alleged victim in Count 3 remains inaccessible to the defense as contact information has been redacted;

    b. This witness is critical not only to Count 3, but also as an alleged witness to a key incident;

    c. Despite multiple requests, this information has not been provided, preventing the defense from conducting necessary investigation.

109. These Brady violations and discovery deficiencies have severely prejudiced Plaintiff's ability to prepare a defense and violate both constitutional requirements and California Penal Code § 1054.1.

### G. Coerced Plea and Due Process Violations (February 2025)

110. On February 18, 2025, immediately before the plea hearing, Public Defender Michelle

Dawson, according to Plaintiff's best recollection, stated to Plaintiff words to the effect of: "If you don't enter a plea, I will withdraw as your counsel."

111. Plaintiff expressed concern about entering a plea before his mental health diversion motion could be heard, emphasizing it was his statutory right under PC 1001.36 to have diversion considered "at any point in the judicial proceedings."

112. Ms. Dawson responded that Plaintiff had no choice but to enter a plea if he wanted to maintain representation, despite there being no statutory requirement for plea entry before diversion consideration.

113. After court concluded on February 18, 2025, Public Defender Dawson coordinated directly with Judge Mockler to schedule the Marsden hearing without consulting with or obtaining input from Plaintiff, demonstrating the ongoing pattern of excluding Plaintiff from decisions affecting his case and denying his right to meaningful participation.

114. Despite Plaintiff's objections, a plea was entered without his voluntary participation while he was being prevented from asserting his ADA rights on February 18, 2025.

115. On February 27, 2025, during the Marsden hearing, Judge Mockler denied Plaintiff's request to vacate his plea, stating, according to Plaintiff's best recollection, that she "did not see how the plea was forced since I was there," without considering the full context and circumstances of the plea entry.

116. These actions violated Plaintiff's due process rights and right to effective assistance of counsel.

### H. Conflict of Interest and File Transfer Issues (January-March 2025)

117. On March 6, 2025, Assistant Public Defender Michael Lepie sent an email stating, according to Plaintiff's best recollection, words to the effect of: "Due to the conflict of interest and the lawsuit filed against our office, attorneys and staff at the Office of the Public Defender can have no further direct contact with you. Your file will be transferred to the Criminal Conflict Panel."

118. This email came immediately after Plaintiff presented evidence of:

    a. Officer John Choi's conflict of interest;

b. Vehicle documentation proving factual impossibility;

c. ADA violations by court personnel;

d. Mental health diversion eligibility.

119. The breakdown in exhibit transfer began during the January 31, 2025 hearing, when Judge Mockler personally handed exhibits from the preliminary hearing to Dugan's stand-in counsel, who did not forward these exhibits to Plaintiff.

120. While Dugan later claimed to have sent exhibits to Dawson, upon information and belief, this transfer either did not occur or was deliberately incomplete.

121. The Public Defender's Office has failed to provide Attorney Horowitz with copies of critical evidence and exhibits, including:

a. ADA accommodation documentation submitted February 5 and 26, 2025;

b. Evidence of Officer John Choi's dual role;

c. Police reports documenting vehicle thefts (July 12 and August 23, 2024);

d. Plaintiff's prepared motion to vacate plea and dismiss charges;

e. Plaintiff's prepared mental health diversion motion;

f. Slickdeals HR report with evidence of defamatory content;

g. Original evidence exhibits prepared for the Marsden hearing;

h. Documentary proof of vehicle ownership and transfer timeline;

i. Medical documentation and ADA accommodation requests;

j. Employment records showing pattern of discrimination.

122. On or around March 22, 2025, Plaintiff requested these missing exhibits directly from Department 27, but no response was received and no exhibits were provided.

123. This coordinated withholding of essential exhibits across multiple parties, from Judge Mockler to Dugan's stand-in counsel to Dawson and Lepie, demonstrates the systematic effort to obstruct Plaintiff's access to evidence necessary for his defense.

124. This failure to provide case files has severely prejudiced Plaintiff's ability to prepare a defense with his new counsel, Daniel Horowitz, and constitutes a continuing violation of Plaintiff's constitutional right to effective assistance of counsel and due process.

1                        **I. Motion Filing Rejection (March 2025)**

2   125. On March 20, 2025, Attorney Daniel Horowitz, appointed by the Criminal Conflict Panel,

3        attempted to file three critical motions:

4          a. A motion for mental health diversion under Penal Code ğ 1001.36;

5          b. A motion to vacate plea and dismiss charges based on factual impossibility;

6          c. A PC 995 motion based on People v. Planchard precedent.

7   126. The court refused to accept these motions without a time waiver from Plaintiff, effectively

8        forcing Plaintiff to choose between:

9          a. Waiving his speedy trial rights, or

10         b. Forfeiting his right to file essential motions for his defense.

11   127. This conditional filing requirement creates an unconstitutional choice between two

12        fundamental rights:

13         a. The right to a speedy trial, and

14         b. The right to present a complete defense.

15   128. This rejection of motions further demonstrates the systematic effort to deny Plaintiff his

16        constitutional rights.

17       **II.A. DIRECT CAUSATION BETWEEN DEFENDANTS' ACTIONS AND**

18                         **PLAINTIFF'S INJURIES**

19   129. Defendants' denial of ADA accommodations directly caused Plaintiff physical injury by:

20          a. Forcing Plaintiff to stand for extended periods at clerk windows on February 18, 2025,

21            despite documented cervical disk herniation, resulting in severe neck pain and muscle

22            spasms that required increased medication;

23          b. Requiring Plaintiff to speak without accommodations on February 18, 2025, despite

24            paralyzed left vocal cord, causing inflammation and strain documented by UCSF on

25            February 26, 2025;

26          c. Denying Plaintiff the ability to refer to written materials on February 27, 2025, which

27            triggered essential tremor symptoms that were observed and documented by witnesses.

28   130. Defendants' procedural barriers directly caused legal prejudice to Plaintiff by:

            COMPLAINT

a. Requiring diversion motions to be submitted to Department 10 while knowing the next available date was May 5, 2025, effectively preventing access to this statutory right before trial;

b. Preventing the timely filing of mental health diversion motion, which would have provided treatment access and potential dismissal of charges;

c. Delaying access to transcripts needed for defense preparation, creating an unfair advantage for the prosecution;

d. Conditioning motion filing on time waiver, forcing an impossible choice between constitutional rights.

131. Defendants' conduct directly caused emotional distress to Plaintiff through:

a. Public humiliation during the February 18, 2025 hearing when bailiffs physically intimidated Plaintiff during accommodation request;

b. Anxiety and stress from being forced to proceed without accommodation, exacerbating PTSD symptoms documented by UCSF;

c. Depression resulting from systematic denial of rights, requiring increased medical intervention as noted in February 26, 2025 medical records.

## II.B. DEFENDANT IMMUNITY CONSIDERATIONS

132. Individual Defendants Cannot Claim Qualified Immunity because:

a. The right to reasonable accommodations under the ADA and Section 504 has been clearly established since the passage of these laws and reinforced by the Supreme Court in Tennessee v. Lane, 541 U.S. 509 (2004);

b. Any reasonable official would know that stating "I don't care" in response to a disability accommodation request violates clearly established law;

c. Any reasonable official would know that threatening a disabled individual with removal from a courtroom for requesting accommodations violates clearly established law;

d. The Ninth Circuit has clearly established that withholding exculpatory evidence violates due process rights under Brady v. Maryland;

e. PC 1001.36 clearly establishes that mental health diversion may be considered "at any

stage of the proceedings," making any procedural barrier to this right a violation of clearly established law;

    f. Defendants received specific notice of their legal obligations through:

        (1) Plaintiff's formal accommodation requests citing relevant law;

        (2) UCSF medical documentation specifying required accommodations;

        (3) Multiple written objections citing statutory authority;

        (4) Prior internal complaints about similar conduct.

133. Eleventh Amendment Immunity is Inapplicable because:

    a. Title II of the ADA validly abrogates state immunity for claims implicating fundamental rights of court access per Tennessee v. Lane;

    b. Section 504's acceptance of federal funding constitutes a valid waiver of immunity;

    c. Individual defendants are sued in both official and individual capacities, and Ex parte Young permits prospective injunctive relief against state officials;

    d. Claims against the County are not subject to Eleventh Amendment immunity as counties are not considered arms of the state.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION – VIOLATION OF CIVIL RIGHTS (42 U.S.C. ğ 1983)

### (Against All Defendants)

134. Plaintiff incorporates by reference paragraphs 1 through 197 as though fully set forth herein.

135. At all times relevant to this action, Defendants were acting under color of state law.

136. Defendants' actions, as described above, violated Plaintiff's clearly established constitutional rights, including:

137. **First Amendment Violations:**

    a. Religious freedom violations through systematic targeting of Jewish identity;

    b. Retaliation for protected speech;

    c. Denial of petition for redress of grievances;

    d. Criminalization of protected moral opinions about love and relationships.

138. **Fourth Amendment Violations:**

      a. Unreasonable searches and seizures;

      b. FLOCK camera data used without warrant;

      c. Vehicle evidence manipulation.

139. **Sixth Amendment Violations:**

      a. Denial of right to counsel (conflict declaration without immediate new counsel);

      b. Coerced plea entry;

      c. Denial of access to exculpatory evidence;

      d. Ineffective assistance of counsel;

      e. Conditioning motion filing on waiver of speedy trial rights;

      f. Setting trial date without addressing transcript and evidence access issues;

      g. Creating procedural barriers to statutory right of mental health diversion.

140. **Fourteenth Amendment Violations:**

      a. Due process violations, including:

        (1) Administrative contradictions regarding fee waivers;

        (2) Denial of access to essential court transcripts;

        (3) Requiring impossible choices between constitutional rights;

        (4) Creating artificial procedural barriers requiring diversion motions to be routed
            through Department 10.

      b. Equal protection denials;

      c. Systematic discrimination.

141. Defendant County of Contra Costa and Defendant Superior Court of California, County of Contra Costa have maintained the following official policies, customs, and practices that were the moving force behind the constitutional violations in this case:

      a. A widespread pattern of denying reasonable accommodations to individuals with disabilities through a deliberately cumbersome and obstructive process, as evidenced by the Court's ADA Coordinator Teri Branco's explicit statement on February 26, 2025, that Plaintiff's requested accommodations would "fundamentally alter" proceedings without providing any factual basis for this conclusion;

b. A deliberate policy of providing contradictory administrative requirements regarding fee waivers for transcripts, creating an impossible barrier to accessing court records as demonstrated by the March 21, 2025 conflicting statements from Judge Mockler and court reporter manager Elisa Chambers;

c. A systematic practice of creating procedural barriers to mental health diversion by requiring motions to be submitted to Department 10 rather than the assigned department, as evidenced by Judge Mockler's consistent statements in all hearings from January 31, 2025, through March 21, 2025;

d. Inadequate training of court personnel regarding ADA obligations, amounting to deliberate indifference, as demonstrated by Andrew Adams' statement that the court was "Not required to help you" regarding ADA form completion and "Not part of DOJ" to dismiss federal obligations;

e. A custom of withholding exculpatory evidence in criminal proceedings, particularly in cases involving disability discrimination, as shown by DA Brown's continuing refusal to address Brady violations despite multiple formal requests on March 17 and March 24, 2025.

142. The constitutional violations described above were the direct and proximate cause of Plaintiff's injuries. When Judge Mockler denied Plaintiff's ADA accommodations on February 18, 2025, stating words to the effect of "I don't care" in response to Plaintiff's presentation of medical documentation, this deliberate rejection of federally protected rights directly resulted in Plaintiff's inability to effectively participate in the hearing, leading to a coerced plea and subsequent physical pain from his medical conditions. Similarly, when DA Brown deliberately withheld exculpatory vehicle documentation showing Plaintiff had sold his car on August 26, 2024, this directly prevented Plaintiff from presenting a complete defense, violating his Sixth Amendment rights and causing emotional distress and legal prejudice.

143. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered:

a. Violation of his constitutional rights;

b. Physical pain and injury;

COMPLAINT

c. Emotional distress;

d. Damage to reputation;

e. Legal expenses;

f. Loss of liberty.

### SECOND CAUSE OF ACTION – VIOLATION OF ADA (TITLE II)

(Against Defendants County of Contra Costa and Superior Court of California, County of Contra Costa)

144. Plaintiff incorporates by reference paragraphs 1 through 207 as though fully set forth herein.

145. Plaintiff is a qualified individual with disabilities as defined by the ADA, 42 U.S.C. ğ 12102, with current medical documentation from UCSF Medical Center dated February 5, 2025, and February 26, 2025, verifying the disabilities described above.

146. Defendants County of Contra Costa and Superior Court of California, County of Contra Costa are public entities as defined by Title II of the ADA, 42 U.S.C. ğ 12131(1).

147. Defendants discriminated against Plaintiff by denying him the benefits of services, programs, or activities of a public entity and subjecting him to discrimination based on disability, in violation of 42 U.S.C. ğ 12132.

148. Defendants' discrimination includes, but is not limited to:

a. Failing to provide reasonable accommodations;

b. Failing to engage in the interactive process;

c. Creating administrative barriers to accommodation;

d. Denying Plaintiff the ability to meaningfully participate in court proceedings.

149. The ADA violation is not merely possible but plausible based on the following specific facts:

a. UCSF medical documentation dated February 5 and 26, 2025 verifies Plaintiff's qualifying disabilities;

b. Judge Mockler's statement "I don't care" when presented with accommodation documentation on February 18, 2025 demonstrates deliberate indifference;

c. Court ADA Coordinator Teri Branco's February 26, 2025 denial letter claimed accommodations would "fundamentally alter" proceedings without explanation;

COMPLAINT

d. Court Operations Manager Andrew Adams' explicit statement that the court was "Not required to help you" regarding ADA form completion;

e. The pattern of accommodation denials across multiple hearings demonstrates intentional discrimination rather than isolated incidents.

150. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered damages, including but not limited to:

a. Physical pain and injury;

b. Emotional distress;

c. Denial of access to courts;

d. Inability to meaningfully participate in his own defense;

e. Costs of suit;

f. Attorneys' fees pursuant to 42 U.S.C. ğ 12205.

## THIRD CAUSE OF ACTION – RELIGIOUS DISCRIMINATION

### (Against All Defendants)

151. Plaintiff incorporates by reference paragraphs 1 through 214 as though fully set forth herein.

152. Plaintiff is Jewish and comes from a Holocaust survivor family, facts known to Defendants.

153. Defendants have engaged in a systematic pattern of religious discrimination against Plaintiff, including:

a. Placement of Stars of David in multiple detention cells, with systematic transfers between marked cells;

b. "Hebrew slave" references and other antisemitic statements;

c. Targeting based on Plaintiff's public support for Israel following the October 7, 2023 attacks;

d. Coordinated harassment following Plaintiff's complaints of antisemitism.

154. The independent validation from X (formerly Twitter) confirming unauthorized use of Plaintiff's image in conjunction with false statements about Palestinians provides substantial evidence of the religious targeting alleged herein.

155. This targeting was based on Plaintiff's religious identity and beliefs and was carried out with

discriminatory intent, in violation of the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause.

156. As a direct and proximate result of Defendants' religious discrimination, Plaintiff has suffered damages, including but not limited to:

a. Violation of constitutional rights;

b. Emotional distress;

c. Exacerbation of PTSD symptoms;

d. Prejudice in legal proceedings;

e. Costs of suit;

f. Attorneys' fees pursuant to 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION – CONSTITUTIONAL VIOLATIONS

### (Against All Defendants)

157. Plaintiff incorporates by reference paragraphs 1 through 220 as though fully set forth herein.

158. At all times relevant herein, Defendants acted under color of state law.

159. Defendants' actions, as described above, violated Plaintiff's clearly established constitutional rights, including:

160. **Procedural Due Process Violations:**

a. Judge Mockler's prevention of full presentation of Plaintiff's Marsden motion;

b. Her explicit admission of not reading submitted materials before ruling;

c. Her summary dismissal of Plaintiff's forced plea claim without full consideration;

d. Her creation of procedural barriers to statutory diversion consideration;

e. Her requirement that diversion motions be submitted to Department 10 despite statutory language allowing consideration "at any stage of the proceedings".

161. **Substantive Due Process Violations:**

a. The court's systematic obstruction of access to mental health treatment;

b. The creation of artificial, non-statutory barriers to diversion consideration;

c. The threats of counsel withdrawal if Plaintiff pursues statutory rights;

d. The expectation that Plaintiff demonstrate a "nexus" to the offense that risks self-

COMPLAINT

incrimination;

e. The imposition of Department 10 routing requirements not found in statute.

162. **Brady Violations:**

  a. Withholding vehicle ownership evidence establishing factual impossibility;

  b. Withholding FLOCK data necessary to challenge prosecution timeline;

  c. Obstruction of access to electronic devices containing potentially exculpatory evidence;

  d. Withholding witness statements and communications regarding timeline discrepancies.

163. As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered damages, including but not limited to:

  a. Violation of constitutional rights;

  b. Legal prejudice;

  c. Emotional distress;

  d. Damage to reputation;

  e. Legal expenses;

  f. Loss of liberty.

### FIFTH CAUSE OF ACTION – PERSONAL INJURY

#### (Against All Defendants)

164. Plaintiff incorporates by reference paragraphs 1 through 227 as though fully set forth herein.

165. Defendants' actions have directly caused Plaintiff physical injury and medical harm, including:

  a. Exacerbation of cervical disk herniation;

  b. Increased pain from speaking without accommodations;

  c. Tremor worsening due to stress;

  d. Vocal cord strain;

  e. Lower back pain from inadequate seating accommodations.

166. These injuries are directly attributable to Defendants' failure to provide reasonable accommodations and creation of unnecessarily stressful procedural barriers.

167. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered:

COMPLAINT

1     a. Physical pain;

2     b. Medical expenses;

3     c. Need for additional treatment;

4     d. Exacerbation of existing conditions;

5     e. Decreased quality of life.

6     **SIXTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL**

7     **DISTRESS**

8     (Against All Defendants)

9     168. Plaintiff incorporates by reference paragraphs 1 through 231 as though fully set forth herein.

10    169. Defendants' conduct was extreme and outrageous, including:

11    a. Systematic denial of reasonable accommodations despite medical documentation;

12    b. Creating impossible administrative requirements;

13    c. Prosecuting charges despite evidence of factual impossibility;

14    d. Targeting based on religious identity;

15    e. Forcing impossible choices between constitutional rights;

16    f. Creating artificial procedural barriers to mental health diversion and then refusing to

17    accommodate the resulting timing conflicts.

18    170. Defendants acted with reckless disregard for the probability of causing emotional distress.

19    171. Plaintiff suffered severe emotional distress as a direct and proximate result, including:

20    a. Exacerbation of PTSD symptoms;

21    b. Anxiety and depression;

22    c. Sleep disturbance;

23    d. Physical manifestations of emotional distress;

24    e. Ongoing psychological harm.

25    **SEVENTH CAUSE OF ACTION – DENIAL OF ACCESS TO COURTS**

26    (Against All Defendants)

27    172. Plaintiff incorporates by reference paragraphs 1 through 235 as though fully set forth herein.

28    173. Defendants have systematically denied Plaintiff access to the courts through:

a. Creation of administrative barriers to transcript access;

b. Provision of contradictory information regarding fee waivers;

c. Denial of ADA accommodations necessary for meaningful participation;

d. Obstruction of access to exculpatory evidence;

e. Rejection of properly prepared motions;

f. Creation of artificial procedural requirements not found in statutes;

g. Requiring diversion motions be submitted to Department 10 despite knowing the earliest available date was May 5, 2025, after the trial date.

174. These actions have effectively denied Plaintiff his constitutional right of access to the courts as recognized by the Supreme Court in Bounds v. Smith, 430 U.S. 817 (1977).

175. The right of access to the courts is a fundamental right protected by the Constitution, and Defendants' actions have deliberately interfered with this right.

176. As a direct and proximate result of Defendants' denial of access to the courts, Plaintiff has suffered:

a. Prejudice to his legal rights;

b. Inability to present a complete defense;

c. Emotional distress;

d. Violation of constitutional rights;

e. Legal expenses.

**EIGHTH CAUSE OF ACTION – CONSPIRACY TO VIOLATE CIVIL RIGHTS**

**(42 U.S.C. § 1985)**

(Against All Defendants)

177. Plaintiff incorporates by reference paragraphs 1 through 240 as though fully set forth herein.

178. Defendants, acting in concert with each other, conspired to deprive Plaintiff of his constitutional and statutory rights.

179. This conspiracy included:

a. Coordinated efforts to deny ADA accommodations;

b. Systematic obstruction of access to exculpatory evidence;

COMPLAINT

1      c. Creation of administrative barriers to transcript access;

2      d. Deliberate obstruction of mental health diversion;

3      e. Coordinated religious and disability discrimination;

4      f. Sierra Dugan's explicit coordination with DA Brown based on shared Navajo heritage;

5      g. Coordinated creation and enforcement of non-statutory requirements for diversion

6         motions to be routed through Department 10.

7  180. The conspiracy was motivated by discriminatory animus based on Plaintiff's religious identity

8     and disability status.

9  181. Defendants took concrete steps in furtherance of this conspiracy, including:

10      a. Creation of contradictory administrative requirements;

11      b. Coordinated rejection of properly filed motions;

12      c. Systematic denial of access to transcripts and evidence;

13      d. Obstruction of statutory rights;

14      e. Sierra Dugan's exclusion of exculpatory evidence while coordinating with DA Brown

15         based on shared Navajo heritage;

16      f. Judge Mockler's consistent statements across multiple hearings from January 31 through

17         March 21, 2025, that diversion motions must go through Department 10.

18  182. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered:

19      a. Violation of constitutional rights;

20      b. Prejudice to his legal defense;

21      c. Emotional distress;

22      d. Physical injury;

23      e. Legal expenses.

24     **NINTH CAUSE OF ACTION – FIRST AMENDMENT RETALIATION**

25                   (Against All Defendants)

26  183. Plaintiff incorporates by reference paragraphs 1 through 246 as though fully set forth herein.

27  184. Plaintiff engaged in constitutionally protected speech by:

28      a. Expressing support for Israel following the October 7, 2023 attacks;

1    b. Filing formal ADA accommodation requests on February 3, 2025;

2    c. Objecting to coerced plea entry on February 18, 2025;

3    d. Filing a formal ADA complaint on March 2, 2025;

4    e. Filing objections to procedural barriers to mental health diversion on March 3, 2025.

5 185. Defendants took adverse actions against Plaintiff in direct response to this protected speech,

6   including:

7    a. Declaring a conflict of interest immediately after Plaintiff presented evidence of Officer

8     John Choi's conflict of interest on March 6, 2025;

9    b. Rejecting Plaintiff's motions on March 20, 2025 after Plaintiff filed objections to

10     procedural barriers;

11    c. Creating administrative barriers to transcript access after Plaintiff filed formal

12     complaints;

13    d. Using physical intimidation tactics during Plaintiff's attempts to exercise protected

14     speech rights in court;

15    e. Enforcing non-statutory Department 10 requirements for diversion motions while

16     denying continuance requests to accommodate the resulting schedule conflicts.

17 186. There is a direct causal connection between Plaintiff's protected speech and Defendants'

18   retaliatory actions, as evidenced by:

19    a. The immediate timing between speech and adverse actions;

20    b. Statements indicating retaliatory intent, including DA Brown's March 25, 2025 threats;

21    c. The pattern of escalating adverse actions following each instance of protected speech.

22 187. Defendants' retaliatory actions would chill a person of ordinary firmness from continuing to

23   engage in protected speech, as they involved threats to Plaintiff's liberty, access to courts,

24   and ability to present a defense.

25 188. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered:

26    a. Violation of First Amendment rights;

27    b. Chilling of protected expression;

28    c. Emotional distress;

COMPLAINT

1      d. Prejudice to legal rights;

2      e. Legal expenses.

3   **TENTH CAUSE OF ACTION – VIOLATION OF THE BANE ACT (CALIFORNIA**

4   **CIVIL CODE ğ 52.1)**

5   (Against All Defendants)

6   189. Plaintiff incorporates by reference paragraphs 1 through 252 as though fully set forth herein.

7   190. Defendants interfered with Plaintiff's exercise and enjoyment of rights secured by the

8      Constitution and laws of the United States and the State of California by threats,

9      intimidation, and coercion, including:

10      a. Public Defender Dawson's threat to withdraw as counsel if Plaintiff did not enter a plea

11         on February 18, 2025;

12      b. Bailiff's threat to remove Plaintiff from courtroom during ADA accommodation request

13         on February 18, 2025;

14      c. Bailiff's placement of hand on weapon during Plaintiff's attempt to assert statutory

15         rights on February 18, 2025;

16      d. Judge Mockler's use of judicial authority to intimidate Plaintiff into abandoning ADA

17         accommodation requests;

18      e. DA Brown's threatening language regarding evidence requests on March 25, 2025;

19      f. The creation and enforcement of non-statutory procedural barriers requiring diversion

20         motions be routed through Department 10, effectively denying access to this statutory

21         right.

22   191. These threats, intimidation, and coercion were specifically intended to interfere with

23      Plaintiff's exercise of constitutional and statutory rights, including:

24      a. Right to reasonable accommodations under the ADA and Section 504;

25      b. Right to present a complete defense under the Sixth Amendment;

26      c. Right to be free from discrimination based on disability;

27      d. Right to access the courts;

28      e. Right to due process;

COMPLAINT

1       f. Right to mental health diversion consideration under PC 1001.36.

2   192. As a direct and proximate result of Defendants' violations of the Bane Act, Plaintiff has

3      suffered:

4       a. Violation of constitutional and statutory rights;

5       b. Physical pain and suffering;

6       c. Emotional distress;

7       d. Humiliation and loss of dignity;

8       e. Legal prejudice.

9   193. Plaintiff is entitled to damages, injunctive relief, civil penalties, and attorney's fees pursuant

10      to California Civil Code ğ 52.1.

11     **ELEVENTH CAUSE OF ACTION – ADA AND SECTION 504 RETALIATION**

12                      (Against All Defendants)

13   194. Plaintiff incorporates by reference paragraphs 1 through 257 as though fully set forth herein.

14   195. Plaintiff engaged in protected activity under the ADA and Section 504 by:

15       a. Requesting reasonable accommodations for his documented disabilities on January 31,

16         2025, February 3, 2025, and February 18, 2025;

17       b. Filing a formal ADA complaint on March 2, 2025;

18       c. Submitting updated medical documentation from UCSF on February 26, 2025;

19       d. Asserting his rights to accommodations during court proceedings.

20   196. Defendants took adverse action against Plaintiff because of his protected activity, including:

21       a. Public Defender's Office declaring a conflict of interest on March 6, 2025 immediately

22         after Plaintiff asserted accommodation rights;

23       b. Rejection of defense motions on March 20, 2025;

24       c. Creation of administrative barriers to transcript access on March 21, 2025;

25       d. Provision of contradictory information regarding fee waivers to prevent access to court

26         records;

27       e. Setting an expedited trial date of April 7, 2025 despite unresolved accommodation issues;

28       f. Imposing and enforcing non-statutory requirements for diversion motions to be routed

through Department 10.

197. A causal connection exists between Plaintiff's protected activity and the adverse actions, as demonstrated by:

    a. The temporal proximity between Plaintiff's assertion of rights and the adverse actions;

    b. The pattern of escalating barriers following each assertion of ADA rights;

    c. Direct statements by Defendants indicating retaliatory intent;

    d. Judge Mockler's denial of Attorney Horowitz's request for continuance on March 21, 2025, despite knowing Department 10's earliest available date was May 5, 2025.

198. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered:

    a. Denial of meaningful access to court proceedings;

    b. Exacerbation of physical symptoms, including increased pain from his cervical disk herniation and vocal cord strain;

    c. Emotional distress;

    d. Prejudice to his legal rights;

    e. Legal expenses.

199. Plaintiff is entitled to compensatory damages, injunctive relief, and attorney's fees under the ADA and Section 504.

## PRAYER FOR RELIEF

1. **Injunctive Relief:**

    a. Order requiring immediate production of all requested transcripts within 7 days;

    b. Order requiring immediate provision of specific ADA accommodations for Plaintiff, including:

        (1) Permission to refer to written materials during all court appearances;

        (2) Additional processing time of 15-30 seconds when responding to questions;

        (3) Mandatory 5-minute breaks every 30 minutes during court proceedings;

        (4) Option to submit written responses when appropriate;

        (5) Digital document access during all proceedings.

    c. Order requiring immediate disclosure of all Brady material, including:

1    (1) Complete unredacted FLOCK data and foundation materials;

2    (2) Access to all electronic devices seized from Plaintiff;

3    (3) Unredacted contact information for all witnesses;

4    (4) Complete documentation regarding vehicle ownership timeline.

5    d. Order continuing the April 7, 2025 trial date until all discovery issues are resolved;

6    e. Order requiring acceptance of Plaintiff's motions without time waiver requirement;

7    f. Order prohibiting the prosecution from using Plaintiff's protected speech as evidence;

8    g. Order prohibiting the requirement that mental health diversion motions be submitted to

9    Department 10, and requiring that such motions be heard by the department assigned to

10    the case;

11    h. Order requiring implementation of mandatory ADA training for all court personnel, to

12    be completed within 30 days;

13    i. Order requiring appointment of an independent ADA compliance monitor for Defendant

14    Superior Court for a period of not less than two years.

15    **2. Declaratory Relief:**

16    a. Declaration that Defendants' actions violate the ADA;

17    b. Declaration that Defendants' actions violate 42 U.S.C. § 1983;

18    c. Declaration that Defendants' actions violate Plaintiff's constitutional rights;

19    d. Declaration that conditioning motion filing on time waiver is unconstitutional;

20    e. Declaration that requiring diversion motions to be submitted through Department 10

21    rather than the assigned department violates PC 1001.36;

22    f. Declaration that Plaintiff's expressions regarding love and relationships constitute

23    protected speech under the First Amendment.

24    **3. Compensatory Damages:**

25    a. For physical pain and suffering in an amount according to proof;

26    b. For emotional distress in an amount according to proof;

27    c. For medical expenses in an amount according to proof;

28    d. For all other economic losses in an amount according to proof.

COMPLAINT

4. **Punitive Damages:**

    a. Against individual defendants in an amount appropriate to punish and deter.

5. **Attorney's Fees and Costs:**

    a. Pursuant to 42 U.S.C. ğ 1988;

    b. Pursuant to 42 U.S.C. ğ 12205;

    c. Pursuant to California Civil Code ğ 52.1;

    d. As otherwise provided by law.

6. Such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

Dated: March 28, 2025

_____

THOMAS J. GODDARD
Plaintiff in Pro Per

*SEE ATTACHED FOR PROPER
CALIFORNIA NOTARY
ACKNOWLEDGEMENT*

COMPLAINT

# CALIFORNIA JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    }

COUNTY OF __Contra Costa__          }

Subscribed and sworn to (or affirmed) before me on this ___28___ day of __March__, __2025__,
                                                                                            Date                        Month                  Year

by _____ Thomas J. Goddard _____

_____
                                        Name of Signers

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature: __Shahrokh Shamloo__
                    Signature of Notary Public

SHAHROKH SHAMLOO
Notary Public - California
Contra Costa County
Commission # 2425187
My Comm. Expires Dec 2, 2026

Seal
Place Notary Seal Above

------------------------------------------------ OPTIONAL ------------------------------------------------

*Though this section is optional, completing this information can deter alteration of the document or fraudulent attachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document:___Federal Complaint_____

Document Date:_____3/28/2025_____

Number of Pages:_____46_____

Signer(s) Other Than Named Above:_____

Systematic Denial of Reasonable Accommodations

**Date:** March 6, 2025

**From:** Thomas J. Goddard [Address Protected by ADA] (415) 985-5539 Case #01-24-03484

**To:** ADA Coordinator Superior Court of California, County of Contra Costa 725 Court Street Martinez, CA 94553

**cc:** Presiding Judge, Superior Court of California, County of Contra Costa U.S. Department of Justice, Civil Rights Division, Disability Rights Section Michelle Dawson, Public Defender's Office Court Administration, Contra Costa County Department 01, Contra Costa Superior Court CRT.Intake@usdoj.gov

## I. INTRODUCTION

I am writing to file a formal complaint under Title II of the Americans with Disabilities Act (42 U.S.C. § 12131-12134) regarding the systematic denial of reasonable accommodations in my ongoing criminal case #01-24-03484. Despite multiple documented requests and the submission of current medical documentation, I continue to experience significant barriers to meaningful participation in court proceedings, in violation of both federal and state law.

## II. DOCUMENTATION OF QUALIFIED DISABILITY STATUS

I am a qualified individual with disabilities as defined by the ADA, with current medical documentation from UCSF Medical Center dated February 5, 2025, and February 26, 2025, verifying the following conditions:

1. Paralyzed left vocal cord requiring communication accommodations
2. Cervical disk herniation with standing, seating, and speaking limitations, causing severe pain in my neck and head
3. Essential tremor affecting handwriting capability
4. Processing limitations requiring additional time and written materials

These documented conditions substantially limit major life activities including communication, standing, writing, and information processing, directly affecting my ability to participate meaningfully in court proceedings without reasonable accommodations.

## III. CHRONOLOGICAL RECORD OF ACCOMMODATION DENIALS

### A. January 31, 2025 - Arraignment on Information Hearing

**Accommodations Requested:** I attempted to submit an MC-410 form requesting official ADA accommodations including permission to refer to written materials and additional time for processing information.

**Manner of Denial:** The clerk improperly rejected my MC-410 form and told me to "speak to HR". I was completely prevented from speaking when attempting to request accommodations. I was forced to attempt to speak over bailiffs and DA while trying to read my accommodation request. Court personnel repeatedly interrupted me and ultimately prevented me from completing my accommodation request.

**Impact:** This denial resulted in my inability to meaningfully participate in the hearing, caused physical discomfort from extended standing, created communication barriers due to my vocal cord condition, and resulted in processing difficulties without written reference materials.

### B. February 14, 2025 - Stand-in Counsel Hearing

**Accommodations Requested:** I renewed my request for accommodations, specifically permission to refer to written materials and additional processing time.

**Manner of Denial:** I was completely prevented from speaking when attempting to request accommodations. The court denied permission to refer to written materials, provided no additional processing time, and repeatedly interrupted me until my accommodation request was effectively denied.

**Impact:** This denial resulted in my inability to present my mental health diversion motion, created communication barriers during critical legal proceedings, prevented me from processing information adequately, and caused physical discomfort from speaking requirements.

### C. February 18, 2025 - Plea Entry Hearing

**Accommodations Requested:** I explicitly requested accommodations at the beginning of the hearing, including written materials access, processing time, and medical breaks as needed.

**Manner of Denial:** Judge Mockler explicitly denied my accommodations. I was completely prevented from speaking when attempting to fully explain my accommodation needs. I was forced to enter a plea without accommodations. After the hearing, I was required to stand for an extended period at the clerk's office while attempting to submit an accommodation request.

**Impact:** This denial resulted in my being coerced into entering a plea without adequate comprehension, being unable to meaningfully process information during rapid proceedings, experiencing physical pain from speaking, and being denied my statutory rights to mental health diversion consideration.

### D. February 26, 2025 - Formal Denial Letter

**Accommodation Process:** I received a formal denial letter from the Court's ADA Coordinator, Teri Branco. The letter acknowledged receiving my MC-410 on February 18, 2025, but claimed my requested accommodations for reference materials and processing time would "fundamentally alter" proceedings. The letter directed me to make specific accommodation requests to the judge directly.

**Reasoning Provided:** The denial letter stated my accommodations would "fundamentally alter" court proceedings. This position directly contradicts the Supreme Court ruling in Tennessee v. Lane, which establishes that reasonable modifications to court procedures are required, not optional, when necessary for meaningful access.

### E. February 27, 2025 - Marsden Hearing

**Accommodations Requested:** I submitted a written Marsden script as part of my ADA accommodation request and requested permission to refer to written materials, additional time to process information and respond to questions, and to present information in a structured format.

**Manner of Denial:** Judge Mockler explicitly stated she "didn't read my Marsden script" that was submitted as part of my ADA accommodation. I was prevented from referring to written materials despite documented processing limitations, not given adequate time to process information and respond to questions, interrupted multiple times while attempting to present information in a structured format, and denied breaks despite speaking for an extended period with documented cervical disk herniation and vocal cord paralysis.

**Impact:** This denial resulted in my inability to fully present grounds for my Marsden motion, increased pain from extended speaking without breaks, communication difficulties due to my vocal cord condition, inability to process complex information without accommodations, and denial of a full and fair hearing on a critical motion.

### F. February 28, 2025 - Subsequent Hearing

**Accommodations Requested:** I restated my accommodation requests during the hearing, again requesting written materials access and processing time.

**Manner of Denial:** My accommodations were again denied without explanation, continuing the pattern of denial without an interactive process.

**Impact:** This denial resulted in my continued inability to meaningfully participate in proceedings, ongoing physical discomfort and pain, and persistent barriers to effective communication.

## IV. PHYSICAL AND LEGAL IMPACT OF ACCOMMODATION DENIALS

### A. Physical Impact

1. Increased neck pain from extended speaking, repeating myself and having to speak over others, particularly in the clerk's office on February 18, 2025 (7/10 severity)
2. Vocal strain from attempting to speak over interruptions without accommodations for my paralyzed vocal cord
3. Tremor exacerbation affecting my ability to handle documents
4. Cognitive processing difficulties due to rapid questioning without breaks

## B. Legal Impact

The denial of accommodations has severely impaired my legal rights, including:

1. Inability to fully present my Marsden motion
2. Prevention of complete presentation of legal arguments
3. Creation of barriers to understanding complex legal proceedings
4. Limitation of my ability to participate meaningfully in my own defense
5. Denial of my statutory rights under PC 1001.36 due to communication barriers
6. Forced entry of plea without adequate comprehension of proceedings

## V. PATTERN OF SYSTEMATIC DENIAL

The documentation herein reveals a consistent pattern of accommodation denials across multiple court appearances, multiple court personnel, and multiple departments. This pattern demonstrates:

1. Failure to engage in the interactive process required by the ADA
2. Deliberate disregard for documented accommodation needs
3. Creation of barriers to meaningful participation in judicial proceedings
4. Direct violation of Title II requirements for court access
5. Violation of California Rules of Court, Rule 1.100

This systematic pattern has effectively denied me "meaningful access to the courts" as guaranteed by the Supreme Court ruling in Tennessee v. Lane (2004) 541 U.S. 509.

## VI. LEGAL AUTHORITY

This complaint is based on the following legal authority:

1. **Title II of the Americans with Disabilities Act (42 U.S.C. § 12131-12134)** "No qualified individual with a disability shall be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

2. **Tennessee v. Lane (2004) 541 U.S. 509** Courts must provide reasonable accommodations to ensure people with disabilities have meaningful access to court proceedings.

3. **California Rules of Court, Rule 1.100** "The court must provide accommodations that will allow the applicant's full participation in the proceedings."

4. **28 C.F.R. § 35.130(b)(7)** Public entities must make reasonable modifications to policies, practices, and procedures to avoid discrimination on the basis of disability.

5. **Cal. Gov't Code § 11135** "No person in the State of California shall, on the basis of... disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state."

## VII. REQUESTED REMEDIES

I respectfully request the following remedies for these ongoing ADA violations:

1. **Immediate Implementation of Accommodations:**
   - Written approval of all requested accommodations for future proceedings
   - Notification to all judicial officers handling my case of these required accommodations
   - Establishment of a protocol to ensure compliance with accommodations

2. **Investigation of Systematic Barriers:**
   - Review of court procedures for handling MC-410 forms
   - Investigation of pattern of accommodation denials in my case
   - Identification of training needs for court personnel regarding ADA obligations

3. **Remedial Measures for Past Violations:**
   - Reconsideration of matters decided without proper accommodations
   - New Marsden hearing with proper accommodations
   - Opportunity to present mental health diversion motion with appropriate accommodations
   - Training for court personnel on ADA requirements and reasonable accommodations

4. **Documentation and Monitoring:**
   - Written documentation of approved accommodations
   - Monitoring of compliance with accommodations in future proceedings
   - Follow-up review of accommodation implementation

## VIII. CONCLUSION

The systematic denial of reasonable accommodations in my case violates Title II of the ADA and California law. These denials have directly impacted my ability to participate meaningfully in court proceedings and have resulted in significant physical pain and legal prejudice.

I request an immediate investigation of these ongoing violations and implementation of the requested remedies. I am prepared to provide additional medical documentation or information as needed.

Please respond to this complaint in writing within 10 business days with an outline of the steps that will be taken to address these serious concerns.

Respectfully submitted,

Thomas J. Goddard Case #01-24-03484 (415) 985-5539

Date: _____

Enclosures:

From: **X Legal Support** legal-support@x.com
Subject: LEGAL-510042: DMCA - Copyright owner
Date: March 11, 2025 at 6:54 PM
To:

_____

Reply above this line.

Hello,

This is an auto-confirmation that we have received your copyright report. X will reply as soon as possible.

Copyright complaints concern the unauthorized distribution or republishing of material protected by copyright law. Here are some examples of possible copyright issues on X:
1. X account publishing links to free downloads of copyright protected materials
2. X account using a copyright protected logo or image

If your report does not involve a copyright protected image that is being used as a X account background or profile image, or posts containing links to unauthorized publication of copyright protected materials, most likely, it is not a X copyright issue.

Many people confuse copyright with trademark. For information on reporting other possible Terms of Service violations, including possible trademark issues, please see this page: https://help.x.com/rules-and-policies/x-report-violation.

If you have concerns regarding an urgent issue relating to abuse or safety on X please refer to the X rules here: https://help.x.com/rules-and-policies/x-rules.

Thanks,

X

--------------------------------------------------
Your ticket number: LEGAL-510042

Copyright owner:
> THOMAS JOSEPH GODDARD
Name:
> THOMAS JOSEPH GODDARD
Company:
> NEUTRINOS PLATFORMS, INC.
Job title:
> FOUNDER AND CEO
Email:
> tom@neutrinos.app

Address:
> 1910 N Main St 627

> 1910 N Main St 027
City:
> Walnut Creek
State/Province:
> CA
Postal code:
> 94596
Phone (optional):
> 4159855539
Fax (optional):
> [Empty]

Where is this infringement happening?
> Twitter
Description of original request:
> Photograph of myself (THOMAS JOSEPH GODDARD)

Links to original work:
> https://neutrinos.app/IMG_0509.HEIC
> https://neutrinos.app/IMG_0509.jpeg

Please provide URL(s) to the infringing material (e.g., Tweet URL, Periscope broadcast URL, Fleet ID, etc.):
> https://x.com/StopArabHate/status/1735663579666284781

Reported content:
> Image/Photograph
Description of infringement:
> Pursuant to 17 U.S.C. § 512(c)(3) of the Digital Millennium Copyright Act (DMCA), this communication serves as a statement that:

I, Thomas Joseph Goddard, am the exclusive copyright owner of the photograph(s) appearing in the following X post:

URL of infringing content: https://x.com/StopArabHate/status/1735663579666284781
Additional appearance of infringing content: https://spotlighthate.com/individual/thomas-goddard/

The copyrighted materials consist of personal photographs taken by me at Golden Gate Park, San Francisco, California on October 4, 2020 at 12:37:30 PM. Specifically, the image identified as IMG_0509.HEIC was captured with my Apple iPhone 11 Pro Max using the Telephoto Camera (52mm f2). The original image has a resolution of 3024 × 4032 pixels and file size of 564 KB. I possess the original files with complete EXIF data to verify my ownership.
The aforementioned material appears on X without my permission, authorization, or consent.
I have a good faith belief that the disputed use is not authorized by myself as the copyright owner, my agent, or the law, including fair use as codified in 17 U.S.C. § 107.
I swear, under penalty of perjury as governed by the laws of the United States, that the

information in this notification is accurate and that I am the copyright owner of the exclusive right that is allegedly infringed.

This unauthorized use goes beyond mere copyright infringement. The infringing party has incorporated my copyrighted image into content that falsely attributes hateful views and phobias to me that I categorically do not possess. This defamatory use has directly led to significant personal harm, including but not limited to:

Targeted harassment
Two separate vehicle thefts
Wrongful termination from employment
Damage to my personal and professional reputation

The infringement constitutes both a violation of my exclusive rights under 17 U.S.C. § 106 and contributes to unlawful defamation that has caused demonstrable harm to my livelihood and personal safety.

I demand immediate removal of all content containing my copyrighted image(s) pursuant to the DMCA.

LEGAL AUTHORITY

This takedown request is submitted under the authority granted by the Digital Millennium Copyright Act, specifically Section 512(c), which provides a safe harbor for online service providers that expeditiously remove or disable access to material claimed to be infringing upon notification from copyright holders.

I expressly reserve all rights, including the right to pursue additional legal remedies available under copyright law (17 U.S.C. §§ 101-1401), including statutory damages of up to $150,000 per willful infringement under 17 U.S.C. § 504(c), and additional claims related to the defamatory nature of the content.

Signed,
Thomas Joseph Goddard

512(f) Acknowledgement:
> I understand that under 17 U.S.C. § 512(f), I may be liable for any damages, including costs and attorneys' fees, if I knowingly materially misrepresent that reported material or activity is infringing.

Good Faith Belief:
> I have good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

Authority to Act:
> The information in this notification is accurate, and I state under penalty of perjury that I am authorized to act on behalf of the copyright owner.

Signature:
> THOMAS JOSEPH GODDARD
Country
> US

**From:** **X Legal Support** legal-support@x.com
**Subject:** LEGAL-510042: DMCA - Copyright owner
**Date:** March 12, 2025 at 1:49 AM
**To:**

_____

Reply above this line.

Hello,

We're writing to let you know that we have reviewed your allegations of copyright infringement, and have disabled the content that you reported from our site. Please note that it may take some time for the content to stop showing in all locations.

We appreciate you letting us know about this.

More information about X's Copyright policy can be found[ |https://help.x.com/en/rules-and-policies/copyright-policy][here|https://help.x.com/en/rules-and-policies/copyright-policy].

To report additional infringing material on X, file a new report using our[ |https://help.x.com/forms/ipi/dmca][dedicated form|https://help.x.com/forms/ipi/dmca].

Thanks,

X

Name: Thomas Joseph Goddard | DOB: 11/17/1978 | MRN: 57150165 | PCP: Maria Catalina Cuervo, MD | Legal Name: Thomas Joseph Goddard



February 26, 2025

**UCSF Primary Care China Basin**
185 BERRY ST. LOBBY 2, SUITE 130
SAN FRANCISCO CA 94107-1756
Phone: 415-514-6420
Fax: 415-514-2998

Patient: **Thomas Joseph Goddard**
MR Number: **57150165**
Date of Birth: **11/17/1978**
Date of Visit: **2/19/2025**

RE: Medical Accommodation Requirements for Thomas J. Goddard Case #01-24-03484

To Whom It May Concern:

I am writing this letter to document the medical necessity for specific accommodations for my patient, Thomas J. Goddard, in accordance with the Americans with Disabilities Act (ADA).

Mr. Goddard has been under my care at UCSF and requires the following accommodations due to documented medical conditions:

COMMUNICATION ACCOMMODATIONS:

1. Digital Document Submission - Patient must be permitted to submit

all court documents digitally
- Email submission must be accepted as a valid form of document delivery
- Assistance must be provided with document submission after email delivery

2. Written Communication Requirements
- Due to paralyzed left vocal cord and severe anxiety
- Patient must be permitted to submit oral correspondence in written form
- This accommodation is necessary to prevent neck strain and associated pain and allow for accurate representation of information
- Speaking loudly causes significant physical discomfort and potential injury

PROCESSING ACCOMMODATIONS:

1. Extended Processing Time
- Additional time required for cognitive processing - Must be provided adequate time to review and respond to documents
- Court clerk and District Attorney must allow for extended processing time
- Patient requires ability to submit prepared statements in writing to clerk

PHYSICAL ACCOMMODATIONS:
1. Standing/Physical Limitations
- Patient cannot be required to stand for extended periods (hours)
- Must be provided seating accommodations if length is expected to exceed 30 minutes
- Recent foot injury and chronic pain require minimized standing
- Physical strain exacerbates existing medical conditions

These accommodations are medically necessary due to the following diagnosed conditions:

- Paralyzed left vocal cord with prosthetic
- Cervical disk herniation
- Chronic neck strain and associated pain
- Left foot pain

- Processing limitations requiring additional time
- Emotional distress from prior ADA violations

The above accommodations are essential for Mr. Goddard to have meaningful access to court proceedings and to prevent further injury or medical complications. These requirements are supported by current medical documentation and ongoing treatment at UCSF. Please ensure all court personnel are made aware of these required accommodations. Failure to provide these accommodations would result in significant medical hardship and potential injury to the patient. If you require any additional information or clarification regarding these medical necessities, please do not hesitate to contact my office.

Sincerely,

Maria Catalina Cuervo, MD

Electronically signed by Maria Catalina Cuervo, MD on 2/26/2025, 12:31 PM

MyChart® licensed from Epic Systems Corporation© 1999 - 2025